UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Cindy Columbia


        v.                              Civil No. 08-cv-98-JD
                                        Opinion No. 2008 DNH 167

John B. Gregory, D.P.M., and
Active Ankle & Foot Center, P.L.L.C.


                        O R D E R

        Cindy Columbia, who is deaf, filed suit against John B.
Gregory, D.P.M., and Active Ankle & Foot Center, P.L.L.C.,
alleging violations of Title III of the Americans with
Disabilities Act ("ADA") and Section 504 of the Rehabilitation
Act of 1973.  Columbia alleges that when she sought treatment at
the Center, the Center and Gregory provided an American Sign
Language ("ASL") interpreter for one visit but refused to provide
an interpreter thereafter and then refused to treat her.
Columbia seeks a declaration that Gregory and the Center violated
the ADA and Section 504, an injunction to require Gregory and the
Center to treat her and to provide ASL interpreter services, and
compensatory damages.

        Instead of filing an answer, the defendants filed
"Defendants' Motion To Dismiss and/or Motion for Summary
Judgment."  An ECF filing error was docketed, noting that the

defendants had improperly combined multiple motions and that the
motion was accepted as a motion to dismiss.  Columbia filed an
objection and an assented-to motion for clarification as to
whether the defendants' motion was to be treated as a motion to
dismiss or a motion for summary judgment.  The court granted
Columbia's motion for clarification and converted the defendants'
motion to a motion for summary judgment because it relied on
materials extrinsic to the complaint.  Columbia was given an
opportunity to respond to the motion as one for summary judgment,
and she has now filed an objection.

<u>Standard of Review</u>

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  The party seeking summary judgment must
first demonstrate the absence of a genuine issue of material fact
in the record.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323
(1986).  To avoid summary judgment, an opposing party must
present competent evidence of record that shows a genuine issue
for trial.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

256 (1986).  All reasonable inferences and all credibility issues
are resolved in favor of the nonmoving party.  See id. at 255.

### Background

Columbia lives in Claremont, New Hampshire.  Because of her
deafness, Columbia's primary language is ASL.  She has difficulty
communicating in writing.  Gregory is a Doctor of Podiatric
Medicine who specializes in ankle and foot surgery.  He is in
private practice at the Center, with offices in Claremont and
Lebanon, New Hampshire.

In July of 2007, Columbia made an appointment with Gregory
because of a painful bone spur on her heel.  No ASL interpreter
was present during the first appointment, and because of the
difficulties in communication, they scheduled a second
appointment on August 8, 2007, with an ASL interpreter present.
They agreed that surgery was necessary, which was scheduled for
October 25, 2007.

On October 16, Columbia and her husband went to the Center
because she had questions about the preoperative instructions.
She was handed a letter, dated October 12, 2007, from Gregory in
which he said that an ASL interpreter would only be present if
there were a complication that required more than ordinary
postoperative care and that otherwise communication could be

accomplished in writing and through family members.  He stated
that if she agreed, he would mail her detailed written
postoperative descriptions but if she disagreed, he would refer
her to a physician at Dartmouth Medical Center.

Columbia sought help from the Disabilities Rights Center
("DRC").  An attorney from the DRC sent Gregory a letter on
October 24, 2007, stating that Columbia was a qualified
individual with a disability under Title III of the ADA and
Section 504 of the Rehabilitation Act and that those statutes
required that a qualified sign language interpreter be provided
when necessary to allow her to communicate effectively.  The same
day, Gregory sent Columbia a letter "to clarify the termination
of our patient-doctor relationship."  He explained that he was
cancelling Columbia's surgery "because there has been absolutely
no clear communication returned from your end."  He recommended
alternative physicians to treat her, offered to contact them on
her behalf, and said that he would forward her medical records
wherever necessary.

Columbia, who is represented by an attorney from the DRC,
filed suit on March 14, 2008.  Thereafter, Gregory resumed
treatment of Columbia, with an ASL interpreter present during all
visits and treatment.  This summer, Columbia underwent surgery
for the bone spur and is now in postoperative care.  Gregory

states in his affidavit that he "agreed to reinstate the doctor-patient relationship with Plaintiff, begin treating her again, and provide an ASL certified interpreter to Plaintiff during any scheduled medical visits with me where treatment will be discussed or provided."

Discussion

Gregory and the Center move for summary judgment, contending that Columbia's ADA claim is moot and that they were not required to provide an ASL interpreter under Section 504 because the Center employs fewer than fifteen people.  Columbia objects, contending that the defendants' decision to treat her does not ensure their future conduct and that Section 504 applies to the defendants.

A.   Is the ADA Claim Moot?

Gregory and the Center contend that Columbia's claim for injunctive relief under Title III of the ADA is moot because they are providing the treatment she needs and have and will continue to provide the services of an ASL interpreter during her treatment.  As a result, they argue, Columbia has achieved what she sought in bringing her ADA claim.  Columbia counters that although she is now being treated by Gregory and the Center with

an ASL interpreter, nothing would prevent the defendants from denying her an interpreter or denying her treatment altogether in the future.

In general, "voluntary cessation of allegedly illegal conduct . . . does not make the case moot" because "[t]he defendant is free to return to his old ways." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953).  In addition, a public interest exists "in having the legality of the practices settled."  Id.  Therefore, voluntary cessation will render a dispute moot only when "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Los Angeles County v. Davis, 440 U.S. 625, 631 (1979) (internal quotation marks omitted).  The defendant bears a "formidable burden to show that the challenged conduct could not reasonably be expected to recur."  Mendez–Soto v. Rodriguez, 448 F.3d 12, 15 (1st Cir. 2006).

Columbia states that she is still receiving treatment from Gregory at the Center, that she anticipates treatment to continue, and that she may require other treatment there for herself or family members in the future.  Although Gregory and the Center are now providing an ASL interpreter for Columbia,

nothing has occurred that would prevent them from deciding not to do so for future appointments.  Therefore, the defendants have not shown that Columbia's ADA claim is moot.

Although the claim has not been shown to be moot, there appears to be little or no disagreement about the outcome.  The court previously directed counsel to use their best efforts to resolve this case before expending the parties' and the court's resources on further litigation.  The issue of providing ASL interpreters for continuing or future treatment of Columbia at the Center can and should be addressed through settlement discussions.

B.  Rehabilitation Act

The defendants contend that they cannot be held liable under Section 504 because they employ fewer than fifteen people.[1]  See 45 C.F.R. § 84.52(d)(1).  Columbia disagrees.

Section 504 of the Rehabilitation Act prohibits discrimination as follows:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(2) of this title, shall, solely by reason of her or his

---

[1]The defendants do not dispute that they receive federal financial assistance from the Department of Health and Human Services or that Columbia is a qualified individual with a disability within the meaning of Section 504.

disability, be excluded from the participation in, be
denied the benefits of, or be subjected to
discrimination under any program or activity receiving
Federal financial assistance or under any program or
activity conducted by any Executive agency . . . .

29 U.S.C. § 794(a).  The Office of Civil Rights ("OCR") of the

Department of Health and Human Services ("HHS") is authorized to

accept and investigate complaints of violations of Section 504 by

entities receiving financial assistance from that department.  45

C.F.R. § 84.6.  Section 504 also includes an implied private

cause of action with remedies, procedures, and rights that are

coextensive with those under Title VI of the Civil Rights Act of

1864.  Barnes v. Gorman, 536 U.S. 181, 185 (2002).

Section 794(a) authorizes federal funding agencies to

promulgate necessary regulations for implementing the

Rehabilitation Act.  While an implementing regulation cannot

create a private cause of action, a regulation that effectuates

or interprets rights created by the statute is enforceable

through a private action under the statute.  Iverson v. City of

Boston, 452 F.3d 94, 100-101 (1st Cir. 2006) (interpreting

Alexander v. Sandoval, 532 U.S. 275, 284-91 (2001)).  A

regulation is not privately enforceable if it "either forbids

conduct that the statute allows or imposes an obligation beyond

what the statute mandates."  Id. at 101.  In addition, a

regulation that merely states a general policy and does not

implement particular rights or obligations is not privately enforceable.  <u>Three Rivers Ctr. for Indep. Living, Inc. v. Housing Auth. of Pittsburgh</u>, 382 F.3d 412, 430 (3d Cir. 2004).

The implementing regulations promulgated under the Rehabilitation Act by HHS include a requirement that "[a] recipient to which this subpart applies that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."[2]  45 C.F.R. § 84.52(d)(1).  Courts have enforced § 84.52(d)(1) to require entities who employ more than fifteen people to provide auxiliary aids under Section 504. <u>See</u> <u>Martin v. Ind. Heart Hosp., LLC</u>, 2007 SL 1498882, at *4 (S.D. Ind. 2007); <u>Estate of Alcalde v. Deaton Specialty Hosp. Home, Inc.</u>, 133 F. Supp. 2d 702, 707 (D. Md. 2001); <u>Davis v. Flexman</u>, 109 F. Supp. 2d 776, 787 & n.5 (S.D. Ohio 1999).  The First Circuit enforced a similar regulation promulgated by the Department of Justice under Section 504, requiring recipients who employ fifteen or more persons to provide auxiliary aids to handicapped persons, 28 C.F.R. § 42.503(f).  <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 120-21 (1st Cir. 2003).

---

[2]Auxiliary aids include interpreters for persons with impaired hearing.  45 C.F.R. § 84.52(d)(3).

In addition, § 84,52(d)(2) states that HHS "may require recipients with fewer than fifteen employees to provide auxiliary aids where the provision of aids would not significantly impair the ability of the recipient to provide its benefits or services."  As authorized by § 84.52(d)(2), HHS through its Director of OCR announced in a notice dated December 6, 2000, that, effective immediately:

> the Office for Civil Rights (OCR) will require recipients with fewer than 15 employees to provide auxiliary aids where the provision of aids would not significantly impair the ability of the recipient to provide its benefits or services, and will investigate complaints against health and social services providers with fewer than 15 employees for failure to provide auxiliary aids to individuals with disabilities under Section 504.

65 Fed. Reg. 79368 (2000).  The notice explained that "in the interest of uniformity and consistent administration of law, Section 504's auxiliary aids requirement should be applied to covered entities with fewer than 15 employees, as is the case under the Americans with Disabilities Act of 1990."  Id.  It also explained that OCR would enforce Section 504 with the responsibilities provided by the notice "through procedures provided for in the Section 504 regulations."  Id. at 79369.

The December 6 notice does not explain its scope, and no court appears to have addressed the legal effect of the December

6, 2000, notice.[3]  Gregory and the Center argue that the notice
may only be enforced by the OCR, and they state that the OCR has
not specifically required them to provide auxiliary aids.
Columbia insists that the notice imposes regulatory obligations
on small providers, like Gregory and the Center, which can be
enforced under Section 504 in a private cause of action.[4]

    As presented, the issue appears to be whether the December 6
notice constitutes a binding legislative rule or merely a policy
statement by HHS.[5]  See Gen. Elec. Co. v. E.P.A., 290 F.3d 377,
382 (D.C. Cir. 2002).  That determination requires consideration
of factors that have not been briefed here.  See Gen. Motors

---

    [3]Columbia interprets Davis, 109 F. Supp. 2d at 187-788, to
hold that "the only thing preventing a claim from being brought
under 84.52(d)(2) was notice from the Director."  Instead, the
court stated in Davis that under § 84.52(d) the defendants were
required to provide auxiliary aids if the clinic employed more
than fifteen people and would be required to provide auxiliary
aids if it employed fewer than fifteen people only "if the
Department of Health and Human Services specifically required the
Clinic to provide such aids."  Id.

    [4]Columbia also minimizes the impact of the fifteen-employee
requirement, contending it applies only to one of her three
claims under Section 504.

    [5]The defendants appear to concede that the December 6 notice
provides a binding rule that can be enforced by HHS's OCR but
argue that the rule cannot be enforced through a private cause of
action.  They offer no authority to support their theory that a
binding rule can only be enforced by the agency and not through a
private cause of action under Section 504.

Corp. v. E.P.A., 363 F.3d 442, 448 (D.C. Cir. 2004); Elizabeth
Blackwell Health Ctr. for Women v. Knoll, 51 F.3d 170, 188-89 (3d
Cir. 1995); Municipality of Anchorage v. United States, 980 F.2d
1320, 1324-25 (9th Cir. 1992).  The court declines to engage in
the complex analysis necessary to determine the effect of the
December 6 notice in the absence of adequate briefing.

## Conclusion

For the foregoing reasons, the defendants' motion for
summary judgment (document no. 6) is denied, without deciding the
issue of whether the December 6, 2000, notice is enforceable
through a private cause of action.  That issue may be addressed,
if necessary, through a properly supported motion for summary
judgment.

The defendants shall file their answer within **twenty days**
from the date of this order.

This is an appropriate time for the parties to engage in
serious and good faith efforts to settle this case.  To that end,
the parties may negotiate privately or use the mediation services
offered by the court.  The parties, jointly, shall notify the

court about the status of their settlement efforts **on or before
October 8, 2008.**

        SO ORDERED.

                                    _____
                                    Joseph A. DiClerico, Jr.
                                    United States District Judge

September 9, 2008

cc:  Catharine A. Mallison, Esquire
     Stephen J. Soule, Esquire